IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| E.G., *et al* | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 16-5456 |
| | : | |
| GREAT VALLEY SCHOOL DISTRICT | : | |

KEARNEY, J.                                                              May 23, 2017

## MEMORANDUM

Parents and school districts they fund through taxes share a common goal of providing children with a free appropriate public education. For many students facing a variety of educational challenges, the school districts prepare individualized education plans to promote the student's growth. When results from these plans do not meet a parent's expectations, the parent may challenge the school district's actions or inactions. Given the student's necessary step-by-step growth, we require timely challenges to perceived deficiencies both so the district can timely resolve them and to avoid examining years of problems when the issues arose long ago. These challenges are resolved by an independent hearing officer subject to our review. Today, we review a hearing officer's detailed findings, after five days of hearings, supporting his conclusion a school district met its obligations for a second to fifth grade student in the district who later transferred to a private academy. In the accompanying Order, we hold the hearing officer properly found the district provided a free appropriate public education for the two years before the parents filed their challenge on June 12, 2015 but the hearing officer erred in barring possible challenges of the district's actions and inactions before June 2013. We remand in part to ensure the hearing officer applies a fine-grained analysis as to each claim before June 2013, including when the parents knew or should have known of the district's alleged deficiency.

## I. Background

E.G., a former student in the Great Valley School District, is challenged with severe learning disabilities particularly in the areas of reading, written expression, and mathematics. E.G. completed first grade at a private Montessori school where the teacher informed E.G.'s Parents the private school could not meet his special education needs. A private institute evaluated E.G. over the summer after first grade and his Parents then enrolled him in Great Valley School District for second grade, the 2011-2012 school year.

The District issued an Individualized Education Plan ("IEP") in February 2012 for the remainder of second grade into third grade. E.G.'s IEP set specific goals for reading, written expression, and math. In December 2012, the District and E.G.'s Parents revised his IEP with higher expectations for reading, written expression, and math for the remainder of third grade and into fourth grade. The District also offered E.G. extended school year for summer 2013 in math but not in reading or written expression. E.G.'s Parents did not accept the District's extended school year offer.

At the start of E.G.'s fourth grade, school year 2013-2014, his Parents requested an IEP meeting and requested tutoring in a particular program for his reading needs. The District and the Parents agreed to have E.G. re-evaluated in November 2013 which showed, as of November 21, 2013, E.G. made minimal progress towards his IEP goals. The District and the Parents eventually agreed to a new IEP in January 2014 including the Parents' requested reading program. In May 2014, the District offered extended school year for E.G.'s reading program and the Parents accepted. In June 2014, the District and Parents updated E.G.'s math goals for his IEP.

At the start of E.G.'s fifth grade, school year 2014-2015, his Parents requested a meeting with the District with the hope of fitting E.G.'s reading program into his daily class schedule. The Parents requested a re-evaluation and the District agreed. The District issued its re-evaluation report in January 2015. The District and the Parents met to revise E.G.'s IEP based on the re-evaluation. In February 2015, the District presented the Parents an IEP which they rejected. The Parents then enrolled E.G. in a private academy's summer school after fifth grade and enrolled E.G. in the private academy for sixth grade.

On June 12, 2015, the Parents filed a due process complaint against the District alleging the District denied E.G. a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act. The Parents sought tuition reimbursement for E.G.'s present private schooling. The Parents also seek reimbursement for extended school year programming for 2013 and 2015 and compensatory education from September 2011 until June 2015. The District moved to strike portions of E.G.'s complaint as untimely and argued it does not have to pay E.G.'s private school tuition because it provided E.G. with a FAPE. Hearing Officer Brian Jason Ford conducted a five day due process hearing. Hearing Officer Ford applied the two year statute of limitations and held E.G. could not recover compensatory education damages for actions arising before June 12, 2013. Hearing Officer Ford then decided the District did not deny E.G. a FAPE from June 12, 2013 until he left the District and the District does not have to reimburse the Parents for E.G.'s private school tuition.

**II. Analysis**

E.G. and his Parents appeal both the statute of limitations bar on recovery for actions before June 12, 2013 and Hearing Officer Ford's substantive determinations for actions after June 12, 2013. E.G. and his Parents "bear the burden of persuasion" on appeal.[1] We review

3

Hearing Officer Ford's findings under a modified *de novo* standard.[2] Under the modified *de novo* standard, we exercise plenary review over Hearing Officer Ford's legal conclusions.[3] We "accord due weight" to Hearing Officer Ford's factual findings considering them *prima facie* correct unless "contrary non-testimonial extrinsic evidence" exists in the record.[4] Our court of appeals cautions us not "to substitute [our] own notions of sound educational policy for those of the local school authorities which [we] review."[5]

For the reasons below, we affirm Hearing Officer Ford in part and remand in part. We affirm Hearing Officer Ford's detailed finding the Parents are not entitled to tuition reimbursement for enrolling E.G. in a private school because the District offered an appropriate placement to E.G. We remand Hearing Officer Ford's dismissal of E.G.'s claims for compensatory education and extended school year before June 12, 2013 so he may determine a date for each claim the Parents knew or should have known the District's actions denied E.G. a FAPE. If warranted, Hearing Officer Ford will then dismiss claims barred by the statute of limitations and decide remaining claims on the administrative record.

### A. The District provided E.G. with a FAPE after June 12, 2013.

Hearing Officer Ford decided E.G.'s claims for tuition reimbursement and compensatory education after June 13, 2013 on the merits. We review and affirm his finding the District did not deny E.G. a FAPE after June 12, 2013 and affirm the denial of tuition reimbursement. When Parents request tuition reimbursement, they must show: (1) the District did not provide a FAPE to E.G.; (2) their placement of E.G. in private school is proper; and, (3) "the equities weigh in favor of reimbursement."[6] We affirm Hearing Officer Ford's finding the District provided E.G. with a FAPE and do not reach the second and third prongs.

4

Whether the District provided a FAPE is a unique fact question but we have guiding standards. The District must create an IEP which is "reasonably calculated to enable [E.G.] to make progress appropriate in light of the child's circumstances."[7] The IEP must confer a "meaningful benefit" on E.G. and "the benefit must be substantial, not minimal."[8] "The FAPE promised to students in the IDEA is not a perfect or ideal education."[9]

"The adequacy of a given IEP turns on the unique circumstances of the child for who it was created."[10] The Supreme Court recently noted for children who are not fully integrated in the regular classroom the goals may differ because standard grade level progress might not be achievable. "If that is not a reasonable prospect for a child, his IEP need not aim for grade-level advancement."[11] We give deference to the District where it "offer[s] a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances."[12]

The District must provide an IEP in the least restrictive environment possible. "The least restrictive environment is the one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled."[13] The District's offering does not have to be "optimal" and "superior to the alternatives," it simply must be calculated to enable E.G. to make progress in light of his specific learning disabilities. The District "offer[s] a cogent and responsive explanations" how the 2015 IEP would ensure E.G. made progress through Wilson tutoring and special education in the least restrictive way possible in light of E.G.'s severe learning disabilities.[14]

1. **Hearing Officer Ford's factual findings support E.G.'s FAPE.**

*Fourth Grade (2013-2014)*

E.G.'s learning disability caused him to struggle in reading, written expression, and mathematics through second and third grade. In the summer between third and fourth grade, the Parents, frustrated by E.G.'s reading progress, enrolled him in tutoring using the Wilson Reading System.[15]

Hearing Officer Ford found Wilson "is a reading program based in the Orton-Gillingham methodology."[16] The program is broken down into steps 1 through 12.[17] The step numbers do not correlate to a student's grade level.[18] "Wilson teaches to automaticity, meaning that a student masters each step before moving to the next. Assuming that Wilson is delivered with fidelity, a student's progression from level to level indicates progress through Wilson itself."[19]

The Wilson tutor told E.G.'s Parents he did not have "good foundational skills for reading" and this prompted the parents to request an IEP meeting at the start of fourth grade, and then a re-evaluation in November of fourth grade.[20] The Parents also requested the District provide Wilson to E.G.[21] In January 2014, the District and Parents agreed to a new IEP which included three 90 minute sessions of Wilson.[22] Hearing Officer Ford found this IEP did not revise E.G.'s reading goals to reflect the new Wilson goals and "created a disjunction between the progress monitoring embedded in the reading goal and [E.G.'s] reading program."[23] The District, however, did provide E.G. a Wilson tutor and he began at Wilson Step 1.3.[24]

In February 2014, the District evaluated how E.G. may benefit from assistive technology and because E.G.'s listening comprehension is significantly better than his reading, the District provided him with an iPad to help him listen to textbooks in his classes.[25] The Hearing Officer found, while E.G. had access to the iPad throughout the remainder of fourth grade and fifth

grade, his "access to and use of the iPad was inconsistent, and the Parents frequently expressed their frustration about the iPad not working."[26]

At the close of E.G.'s fourth grade year, the District offered Wilson for extended school year but did not offer extended school year for math because E.G. met his math goal.[27] The Parents accepted and the District provided E.G. with Wilson over the summer.

### *Fifth Grade (2014-2015)*

E.G. then returned for fifth grade, his final year in District. Before the school year began, the Parents requested an IEP meeting to discuss how Wilson would fit into E.G.'s fifth grade schedule that year.[28] The District suggested Wilson be provided during E.G.'s regular social studies and science classes but the Parents objected because they wanted E.G. to have as much regular instruction with his peers.[29] Hearing Officer Ford found credible "the District acquiesced and [E.G.] received Wilson during Language Arts period" when E.G. already is apart from his regular peers. This decision caused E.G. to have to split his traditional language arts special education curriculum with Wilson three days a week.[30]

### *E.G.'s 2015 Re-evaluation and IEP*

The District and the parents approved the IEP in September 2015 and then the Parents requested the District reevaluate E.G.[31] The District agreed and issued a re-evaluation in January 2015. According to the benchmark testing, E.G.'s instructional reading level was at the second grade.[32] The AIMSweb testing showed E.G. could read orally "comfortably" with second grade material and his reading comprehension was average at a third grade level.[33] The evaluation showed E.G. applied Wilson strategies to his reading which "reduced [E.G.'s] reading fluency (speed in this context) but increased [E.G.'s] reading accuracy."[34]

7

The District also evaluated E.G. using WADE, which assesses a student's progress in Wilson. The WADE showed E.G.'s "progress towards mastery of the then-current Wilson level (level 5). Generally, the WADE suggested that [E.G.] was ready to advance having mastered level 5 reading and spelling skills."[35] E.G. began Wilson at Step 1.3 in January 2014 and now after the November 2014 WADE, E.G. nearly mastered Step 5.

The District also evaluated E.G. through the KTEA-II and WJ-III where E.G. overall scored below average or average in reading, writing, and math skills. The evaluator concluded E.G. "was making progress towards all academic goals with the exception of reading fluency."[36] Hearing Officer Ford found, based on testimony, "Wilson values accuracy over speed" and "[r]eading fluency is expected to improve as basic reading skills improve."[37]

After E.G.'s re-evaluation, the District and Parents worked together to revise E.G.'s IEP. Hearing Officer Ford found the IEP "includes an accurate, detailed description of [E.G.'s] present levels of academic achievement and functional performance, incorporating nearly all of the" 2015 re-evaluation.[38] He found the IEP includes (1) accommodations for state testing; (2) math computation, concepts, and applications goal; (3) Wilson decoding, encoding, reading comprehension, and written expression; and, (4) specially designed instruction for math, reading program, Wilson, supplemental academic support, assistive technology for iPad, and modification to content area courses.[39] The Parents rejected the IEP in February 2015. After E.G.'s fifth grade year, the Parents enrolled E.G. in a private tutoring and then enrolled E.G. in private schooling for his sixth grade year.[40]

### 2. We affirm Hearing Officer Ford's finding the District provided E.G. a FAPE.

The Parents' central challenge is Hearing Officer Ford ignored or found the Parents acquiesced to E.G.'s lack of "meaningful academic progress over several years in the District, in

8

math, writing, and especially reading."[41] The Parents also argue the District did not implement the Wilson method with fidelity, the tutor moved forward before E.G. mastered a level or did not cover on lessons in each level. Hearing Officer Ford's factual findings are supported by the evidence and we do not disturb his credibility determinations.

Hearing Officer Ford acknowledged E.G.'s progress was "maddeningly slow" and "stagnation on tests that link ability to grade level...would be a strong indication that progress was not made....and usually proves a denial of FAPE."[42] Hearing Officer Ford, however, found the Parents requested Wilson for E.G. "which is linked to skill acquisition, not grade level."[43] Hearing Officer Ford rejected the Parents' argument the District did not implement Wilson with fidelity because there is no evidence to support it. In fact, the WADE which tests E.G.'s progress with Wilson showed he progressed from step 1.3 to step 8.1 at the District.

We closely reviewed the record and agree with Hearing Officer Ford "the record supports a conclusion that [E.G.] made meaningful real-world progress relative to the severity of [E.G.'s] disability. The significance of [E.G.'s] ability to generalize Wilson skills into the Language Arts classroom cannot be understated. Applying Wilson skills across all settings strongly indicates that Wilson instruction is working."[44]

Hearing Officer Ford also found the Parents "insisted" Wilson administered to E.G. during his Language Arts time to maximize his time in regular classes. Hearing Officer Ford reasonably found E.G.'s MAP and AIMSweb performance suffered because the time spent in Wilson detracted from his other language arts subjects and not because the District's instruction was not appropriate.

Hearing Officer Ford's determination the District provided E.G. a FAPE is supported by his factual findings the District provided effectual IEPs because it provided E.G. with Wilson

9

and he made meaningful progress in Wilson. As the Supreme Court recently reminded us, the adequacy of the IEP turns on the child it is created for, not extrinsic factors.[45] E.G.'s severe reading disability meant grade level achievement is not a reasonable prospect. "If that is not a reasonable prospect for a child, his IEP need not aim for grade-level advancement."[46] The parties agreed E.G.'s reading disability is the most problematic and his math and writing needs stem from it. The parties also agree E.G. needs an Orton-Gillingham methodology based program to learn foundational reading skills. It is reasonable for Hearing Officer Ford to accept the District's "cogent and responsive explanation" for E.G.'s instruction in Wilson which is "reasonably calculated" to enable him to progress in reading in light of his severe reading disability.[47] We affirm Hearing Officer Ford's holding the District provided E.G. a FAPE in the least restrictive manner in light of his needs.

### B. Hearing Officer Ford incorrectly applied the "knew or should have known" analysis to bar claims before June 12, 2013.

Hearing Officer Ford limited the Parents' remedies to after June 12, 2013, two years before the Parents filed their complaint because the "entire period of time, the [knew or should have known] date (or dates) necessarily falls [sic] within the IDEA's two-year filing deadline." Hearing Officer Ford dismissed claims occurring before June 12, 2013 as untimely and "did not consider the Parents' demand for compensatory education to remedy an alleged denial of FAPE during the 2012-2013 school year."[48]

The Parents now appeal Hearing Officer Ford's finding E.G.'s claims before June 12, 2013 are untimely under our Court of Appeals decision in *G.L. v. Ligonier Valley Sch. Dist. Auth.*.[49] The Parents argue Hearing Officer Ford erred in holding they were on notice for statute of limitations purposes the moment the District took each action. The Parents argue the date

10

they knew or should have known the District's alleged actions denied E.G. a FAPE is November 21, 2013 when the District re-evaluated E.G.

Hearing Officer Ford found the Parents had "contemporaneous knowledge of the District's actions as they occurred" but he never specifies the date E.G.'s Parents knew or should have known the District's alleged actions forming the basis of their complaint. Instead, he finds the Parents had permanent omniscience of the District's actions during E.G.'s four years there.[50] Hearing Officer Ford does not determine when the District's alleged actions manifested themselves to be reasonably discovered by Parents or distinguish between the various actions taken by the District and challenged by the Parents.

### 1. The standard for IDEA's Statute of Limitations.

Congress amended IDEA in 2004 to, among other things, add a statute of limitations for the first time but the final bill included conflicting language in two of its sections. One section, 20 U.S.C. § 1415(f)(3)(C), mandates "a parent or agency shall request an impartial due process hearing **within 2 years of the date the parent or agency knew or should have known about the alleged action** that forms the basis of the complaint." Another section, 20 U.S.C. § 1415(b)(6), mandates "the procedure required by this section shall include the following...an opportunity for any party to present a complaint...which sets for **an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action** that forms the basis of the complaint."

Our court of appeals analyzed the conflict between these two sections in *G.L.* in 2015, the first federal appellate court to address it since 2004.[51] In *G.L.*, the parents filed their due process claim on January 9, 2012 and asked for compensatory education from September 2008- March 2010.[52] The hearing officer found the parents knew or should have known the district denied

11

their child a FAPE on March 9, 2010 and the parents timely filed the complaint within two years from when the parents' discovered the alleged denial of the FAPE.[53] The hearing officer in *G.L.* held § 1415(b)(6) "barred relief for violations more than two years before the complaint was filed" based on the language about alleged violations "that occurred not more than 2 years before" the parents' discovery date.[54] This holding meant the student could only recover relief from January 2010 to March 2010 because those are the only months where the District committed alleged violations counting two years back from January 9, 2012 complaint.[55]

In *G.L.*, the parents argued the hearing officer misconstrued the statute of limitations in § 1415(b)(6) to limit recovery to two years before they filed a due process complaint.[56] The district court disagreed with the hearing officer's interpretation of § 1415(b)(6) and held "[the student's] relief may extend from two years before the reasonable discovery date through the date the complaint was filed, which could be up to two years after the reasonable discovery date, for a maximum period of four years." In essence, IDEA's statute of limitations sections taken together create a two year buffer or "2+2", the parents have two years to file after the reasonable discovery date but can only recover two years back from the date they filed the complaint.[57]

The district court certified its Order for interlocutory appeal and our court of appeals decided the statute of limitations as an issue of first impression.[58] Our court of appeals reversed both the district court's and the hearing officer's interpretation of the conflicting IDEA language. Our court of appeals engaged in extensive statutory and legislative analysis ultimately holding "[t]he legislative history is thus crystal clear that Congress intended to impose a single statute of limitations, but otherwise not to limit a court's power to remedy the deprivation of a free appropriate education."[59] IDEA's conflicting sections create a two year statute of limitations

12

from the date the party knew or should have known about the action amounting to the denial of a FAPE to file a complaint.[60]

Our court of appeals held § 1415(b)(6) did not stop parents from recovering remedies for deprivations of a FAPE occurring more than two years before the filing the complaint.[61] The remedial nature of IDEA and lack of clear evidence § 1415(b)(6) intended to limit remedies persuaded our court of appeals "Congress did not abrogate our longstanding precedent that 'a disabled child is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem.'"[62]

### 2. The discovery rule for IDEA violations.

E.G.'s Parents had two years from the date they knew or should have known the District's alleged actions denied E.G. a FAPE but as long as their complaint is timely, their remedies are not temporally limited. Hearing Officer Ford muddies the distinction when he limited the remedies to two years before the complaint is filed stating "in this case, claims arising out of actions occurring on or after June 12, 2013 are timely" based on his holding the Parents had contemporaneous knowledge of every action the District took.

Hearing Officer Ford finds the "knew or should have known date" is when "the Parents knew what the District was doing", not when, as the Parents' argue, they became aware the District's actions denied E.G. a FAPE. Hearing Officer Ford reaches this conclusion by dismissing any discussion in *G.L.* of how to determine a "knew or should have known date" by our court of appeals as "just" dicta because neither party in *G.L.* disputed the hearing officer's determination of the discovery date.[63]

13

Hearing Officer Ford focuses exclusively on § 1415(f)(3)(C) use of "alleged action that forms the basis of the complaint" and delves into the statutory meaning of "action." Hearing Officer Ford found "action" refers to the District's "initiation or change of the identification, evaluation, placement or provision of a free appropriate public education." We agree.

But we do not agree with his holding E.G.'s Parents' "knowledge of the *action* forming of the complaint – not knowledge that the action amounts of a violation."[64] This strict holding would make determining the "knew or should have known date" very simple and render the discovery rule obsolete. It is particularly troublesome when the District's challenged action is the "provision of free appropriate education." A parent is theoretically aware every day the District's "action" of providing a FAPE to their child because they send him or her to school and the child may return home at the end of the day. The knowledge the child attends school each day cannot be all § 1415(f)(3)(C) requires to file a complaint. A parent cannot challenge the District's provision of a FAPE without a violation. Section § 1415(b)(6)(B) requires the parent to allege a "violation" based on the District's alleged actions. Then the parents must "discover" the District's actions violated their child's right to a FAPE. These actions can happen on the same day or be spread over months or years.

Hearing Officer Ford's general holding E.G.'s Parents had contemporaneous knowledge of the District's actions without explaining whether the Parents knew or should have known those actions denied E.G. a FAPE does not allow us to meaningfully review the record. Hearing Officer Ford must examine <u>each alleged violation</u> and determine the date the Parents knew or should have known the District's conduct violated E.G.'s right to a FAPE and eliminate those discovered more than two years before June 12, 2015.

14

A district court in the District of Columbia recently explained the importance of deciding the discovery date for <u>each violation</u> when a due process complaint alleges numerous different violations over several years. In *Damarcus S. v. District of Columbia*, a student with an intellectual disability entered the school district in September 2006 as a first grader.[65] The school district evaluated the student and placed him full-time in a special education classroom.[66] The student remained in the school district but his IEP goals remained stagnant for years.[67] In seventh grade, the school district re-evaluated the student and found the student's cognitive abilities showed him capable of greater academic achievement than he achieved in the school district.[68] The student filed a due process complaint in May 2013 challenging the IEPs from 2010-2013 and amended it through December 2014 with additional challenges to the student's 2014 IEP.[69] The hearing officer dismissed the student's claims for IEPs in 2010, 2011, and 2012 and the claims relating to the implementation of the 2012 IEP before December 16, 2012, two years before the student filed his due process complaint.[70] The student appealed and the district court adopted our court of appeals' holding in *G.L.* in full.[71] The district court held the hearing officer was not necessarily incorrect in finding the student "may only include violations dating back as far as two years prior to the filing" of the complaint. The district court reversed because the officer found "the [knew or should have known] date for the violations alleged in the instant case is the same date as the alleged violations themselves."[72]

The district court did not "take issue with [the hearing officer's] application of the discovery rule except to the extent that she determined [the student] should have discovered the alleged IDEA violations on the very date they occurred." The hearing officer did not offer "the kind of 'fine-grained analysis' that is necessary to determine discovery dates in a complaint alleging so many different IDEA violations."[73]

15

The District of Columbia District Court explained the hearing officer's discovery date "inquiry should depend upon the particular deficiency asserted, and the parent's ability to recognize it."[74] Even the assumption the student is not "making progress is not enough to trigger notice, because the lack of progress could have been attributable to [the student's] low aptitude rather than inadequate educational support."[75] The district court remanded to the hearing officer to reconsider all the student's claims occurring before December 16, 2012 and analyze each alleged violation individually.[76]

As in *Damarcus S.*, Hearing Officer Ford's holding E.G.'s Parents had contemporaneous knowledge of the District's actions automatically means the Parents knew or should have known about all violations occurring before June 12, 2013 is too broad. On remand, Hearing Officer Ford must conduct a "fine-grained analysis" for each of E.G.'s claims for relief independently for the "particular deficiency asserted, and the parent's ability to recognize it."[77] Hearing Officer Ford must then determine the date the Parents knew or should have known this District's actions violated E.G.'s right to a FAPE. Hearing Officer Ford will then apply the two year statute of limitations to each claim and dismiss the time-barred claims. If timely claims remain, Hearing Officer Ford will determine if the District denied E.G. a FAPE before June 12, 2013 and what, if any, compensatory damages he may be entitled to from the District.

### III. Conclusion

In the accompanying Order, we grant the District's motion for judgment in part as to Hearing Officer Ford's findings after June 12, 2013 and we grant E.G.'s motion for judgment in part seeking remand to properly address alleged deficiencies before June 12, 2013.

---

[1] *Tyler W. ex rel. Daniel W. v. Upper Perkiomen School Dist.*, 963 F. Supp. 2. 427, 432 (E.D. Pa. 2013) (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012)).

16

[2] *Id.* (citing *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)).

[3] *Id.*

[4] *Id.* (internal citations omitted).

[5] *Id.* (quoting *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 757 (3d. Cir. 1995) (internal citations omitted)).

[6] *L.M., ex rel. M.M. v. Downingtown Area School Dist.*, 2015 WL 1725091 at *10 (E.D. Pa. April 15, 2015) (citing *Florence Cnty. Sch. Dist. v. Carter ex rel. Carter*, 510 U.S. 7, 12-16 (1993) and *Sch. Comm. of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985)).

[7] *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, __ U.S. __, 137 S. Ct. 988, 1001 (2017).

[8] *T.M. on behalf of T.M. v. Quakertown Community School District*, --- F. Supp. 3d ---, 2017 WL 1406581 at *3 (E.D. Pa. 2017).

[9] *Coleman v. Pottstown Sch. Dist.*, 983 F. Supp. 2d 543, 563 (E.D. Pa. 2013), *aff'd in part*, 581 F. App'x 141 (3d Cir. 2014)

[10] *Endrew F*, 137 S. Ct. at 1001.

[11] *Id.* at 1000.

[12] *Id.* at 1002.

[13] *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 265 (3d Cir. 2003) (quoting *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 535 (3d Cir.1995)).

[14] *Endrew F.*, 137 S. Ct. 988, 1002.

[15] Appendix of the Administrative Record ("Appx") at 6a. The parties filed the full redacted administrative record at ECF Doc. No. 13.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 7a.

[21] *Id.*

[22] *Id.* at 8a.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 9a.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at 9a-10a.

[34] *Id.* at 10a.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 10a-11a.

[38] *Id.* at 11a.

[39] *Id.* at 12a.

[40] *Id.* The Parents argue Hearing Officer Ford's incorrect statement E.G.'s new private school uses Wilson, instead of Orton-Gillingham, is a reason to remand. We disagree. Hearing Officer Ford decided the District provided E.G. a FAPE so he did not make findings regarding the private school's programs or benefits.

[41] ECF Doc. No. 12 at 12.

⁴² Appx. at 15a.

⁴³ *Id.*

⁴⁴ *Id.*

⁴⁵ *See Endrew F.*, 137 S. Ct. 988, 1000-1002

⁴⁶ *Id.* at 1000.

⁴⁷ *Id.* at 1002.

⁴⁸ *Id.*

⁴⁹ *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 624 (3d Cir. 2015).

⁵⁰ *See* Appx. at 4a. "The Parents had actual knowledge of the District's actions every step of the way."

⁵¹ The Ninth Circuit Court of Appeals recently decided this issue and endorsed our Court of Appeals holding in *G.L. See Avila v. Spokane School District 81*, 852 F.3d 936, 943-44 (9th Cir. 2017).

⁵² *G.L.*, 802 F.3d at 606.

⁵³ *Id.*

⁵⁴ *Id.* at 607.

⁵⁵ *Id.*

⁵⁶ *Id.*

⁵⁷ *Id.*

⁵⁸ *Id.*

⁵⁹ *Id.* at 624.

⁶⁰ *Id.* at 626.

⁶¹ *Id.*

⁶² *Id.* at 626.

[63] Appx. at 3a.

[64] *Id.* at 4a.

[65] 190 F. Supp. 3d 35, 40 (D.D.C. 2016).

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at 42.

[70] *Id.* at 43.

[71] *Id.* at 44.

[72] *Id.*

[73] *Id.* at 45 (internal citations omitted).

[74] *Id.* (internal citations omitted).

[75] *Id.* at 46.

[76] *Id.*

[77] *Id.*